In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | | |
|---|---|---|
| Tito Lemont Knox, #13813-171, | ) | Civil Action No. 9:07-0283-HMH-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Officer Rt. Graham and Dept. Garner, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  INTRODUCTION

The Plaintiff Tito Lemont Knox ("Plaintiff" or "Knox") is detained on federal criminal charges[1] and at the time of filing this action was detained at the Federal Medical Center in Butner, North Carolina.  [17].  Proceeding *pro se*, he seeks relief from the above-captioned Defendants, Officer Rt. Graham ("Graham") and Dept. Garner ("Garner"), who are officers of the Greenville County She in their individual and official capacities, for alleged violations of Plaintiff's civil rights under 42 U.S.C. § 1983.[2]  Plaintiff seeks monetary damages.

---

[1]  Knox is currently detained at the Federal Medical Center in Rochester, Minnesota pursuant to a Judgment of Acquittal and order of commitment for treatment until he was no longer a threat to himself or others, pursuant to 18 U.S.C. § 4243, entered in the case of *Knox v. United States of America*, Civil Action No. 9:07-1792-HMH-GCK, (*see Judgment of Acquittal* [35-3]).  It is appropriate for the Court to take judicial notice of the Plaintiff's prior cases.  *See Aloe Creme Lab., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (noting that the District Court clearly had the right to take notice of its own files and records).  *See also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.' ").

[2]  42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.  THE *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Publ L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. at 9.  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction

---

action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993)), nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Such is the case with the present complaint.

### III. FACTUAL BACKGROUND

Plaintiff states in his verified Complaint[3] [1] that on June 13, 2005, while on the private property of his uncle Timothy Chandler, he was subjected to an unlawful search and seizure by the Defendants Graham and Garner. Knox now alleges he was arbitrarily searched and arrested without a search or arrest warrant and that as a result his civil rights have been violated. He requests that the court dismiss the indictment[4] which followed the arrest, and order monetary

---

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[4] The indictment referenced presumably regards the charges dismissed by Judge Herlong at the June 19th hearing, mooting this claim.

relief.

The Defendants contend that at all times in question, Graham was a patrol officer with the Greenville County Sheriff's Department. (Transcript of Suppression Hearing [50-2] at p. 4) Graham testified that on June 13, 2005, he responded to a call from dispatch to 659 Bessie Road as a result of a report of a suspicious person discharging a firearm into Highway 86. (Transcript of Suppression Hearing [50-2] at p. 5) Graham arrived on the scene and observed Plaintiff lying in a front yard between an old white house and the road. (Transcript of Suppression Hearing [50-2] at pp. 14, 15) Plaintiff was crawling on the ground and was running his hand across a string, which was one of many stretched across the ground. Graham asked Plaintiff what he was doing and Plaintiff said he was petting a snake, but no snake was visible to Graham. (Transcript of Suppression Hearing [50-2] at p. 6)

Since Graham was responding to a call regarding a shooting, Graham asked Plaintiff if he had a gun. Plaintiff stated he had a BB rifle in his truck and pointed toward a red truck near him. Graham asked if he had any other guns, and Plaintiff said no. Graham removed the gun from the truck and secured it in his patrol car. Greenville County Sheriff's Officer J. Garner arrived to provide backup and spoke with neighbors; they told Garner that they were relatives of Knox, and that Knox was armed and had been shooting at the highway. (Transcript of Suppression Hearing [50-2] at p. 8) At that time, Graham drew his weapon and Garner handcuffed Knox and withdrew a Ruger .357 revolver (the "Gun") from the SWAT style vest Petitioner was wearing.[5] The Gun was loaded with 6 rounds, one of which had been shot. (Transcript of Suppression

---

[5]  Knox denied at his hearing that he was touched or searched by Garner.

Hearing [50-2] at p. 9) Based on his investigation at the scene, Graham determined that no one was living at the residence where the incident occurred. Knox informed Graham he was using the property as a camp to train youth to fight terrorists. (Transcript of Suppression Hearing [50-2] at p. 9)

Graham swore out a warrant for Knox's arrest on June 14, 2005 for Felon in Possession of a Firearm. These charges have not been disposed of. (SLED report. Defendant's Exhibit 1) Knox was subsequently indicted by the Federal Grand Jury on March 14, 2006 (Defendant's Exhibit 2) for a violation of 18 U.S.C. Sections 922(g)(1), 924 (a) (2) and 924 (e) as a result the weapon found on his person. (*United States v. Knox*, 6:06-269) These statutes declare it unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In the bench trial in the federal case, Knox, through his attorney, moved to suppress the evidence of the firearm confiscated in his June 13th arrest, arguing that the search and seizure of that weapon was in violation of his Fourth Amendment rights. His motion was heard before the Hon. Henry M. Herlong, Jr., on June 19 2007. Both Knox and Graham testified at this hearing. Judge Herlong ruled as follows:

> The issue here is whether the officer had a right to retrieve the firearm. Facts that are not in dispute are that Mr. Knox was adjacent to the highway. And the officer had received a call to investigate an incident of someone shooting near a public roadway. When he arrived he found Mr. Knox lying down under strange circumstances. And eventually an officer found this defendant in possession of a firearm. And under the facts and circumstances which are not in dispute in this case, the officer certainly was reasonable -- or the officers, both of the officers, it really does not matter which officer it

> was that actually retrieved the weapon, they were properly there on the premises and they were properly investigating an incident. And they properly used measures to secure the scene and secure their safety and found this defendant in possession of a firearm. So their seizure of the firearm was proper. Motion to suppress is denied. (Transcript of Suppression Hearing [50-2] at pp. 15, 16)

Subsequent to ruling regarding the suppression of evidence Judge Herlong met with counsel for the United States and Knox. The parties proceeded with a bench trial in which the court held that Knox, beyond a reasonable doubt, did commit the offense. However, the Court found that Knox not guilty only by reason of insanity and entered a judgment to that effect. (Transcript of Suppression Hearing [50-2] at p. 20)

## IV. PROCEDURAL HISTORY OF THIS ACTION

On January 29, 2007, Knox filed the above-captioned lawsuit against Graham alleging that he was subjected to an unlawful search and seizure.[6] [1] On June 14, 2007, Knox filed an amended complaint, adding Officer Garner as a second defendant and contending that Graham and Garner made false statements when they stated that Garner removed the gun from his person; Knox claims that Garner never searched him. ([22] at p. 1) Knox therefore argues that the grand jury returned an indictment based on a false incident report. ([22] at p. 2) Knox further alleges that he was arrested while on private property, without exigent circumstances, that no crime or criminal activity had occurred, that he was targeted as a "suspicious black male," that the person who called the Sheriff's office had never been identified, that an arrest warrant should have been obtained prior to the arrest, and there was no probable cause for an

---

[6] Plaintiff initially had named as additional defendants the United States of America, Reginald Lloyd, United States Attorney and Max B. Cauthen, III, Assistant United States Attorney. The United States, Lloyd and Cauthen were dismissed by order of the Hon. Henry M. Herlong, Jr. on May 2, 2007. [17]

arrest. ([22] at p. 3)  Petitioner claims that Graham and Garner committed perjury which led to his wrongful indictment and malicious prosecution.

On June 22, 2007, an answer to the original complaint was filed on behalf of Defendant Graham, which set forth a general denial and various affirmative defenses, such as Eleventh Amendment immunity, failure to state a claim, qualified immunity, protections under Section 1983, limitations of liability under the South Carolina Tort Claims Act, and that the doctrine of *res judicata* barred this action because the matter about which Plaintiff complained had been ruled upon by Judge Herlong after a suppression hearing held before the Court on June 19, 2007. [24]

After the Amended Complaint had been filed, an answer to it was filed by Graham, which reiterated the initial defenses set forth in his answer and also added as an affirmative defense that the changes against the Defendants were dismissed as a result of a finding that the Plaintiff was not mentally competent to stand trial on the charges, and thus Plaintiff's claims were barred pursuant to the doctrine of mootness.  [37]

On September 17, 2007, Graham filed a motion for summary judgment.  [50]  On September 19, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the undersigned advised Knox of the summary judgment procedure and the possible consequences if he failed to respond adequately.  [52]  On September 25, 2007, Knox filed a response in opposition to the motion for summary judgment.  [55]  On September 26, 2007, Knox filed a second response in opposition to Defendants' Motion for Summary Judgment.  [57]

Service was effected upon Garner on October 17, 2007 [70], and on November 7, 2007,

an answer to the amended complaint was filed on his behalf which alleged defenses identical to those asserted by Graham. [71] Thereafter, the Court issued a scheduling Order requiring that dispositive motions be filed by December 22, 2007. [74] Garner moved for an extension of time, which was granted by the undersigned, and a motion for summary judgment was filed on Garner's behalf on January 8, 2008. [77; 79; 82] On January 10, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the undersigned advised Knox of the summary judgment procedure and the possible consequences if he failed to respond adequately. [83]

Knox filed a motion to compel discovery from Graham and Garner on February 11, 2008. [93] On February 29, 2008, Knox filed his response in opposition to Garner's motion for summary judgment. [96] The Defendants responded to Plaintiff's interrogatories and motion to compel on March 5, 2008. [101]

At this time, the motions for summary judgment and the Plaintiff's motion to compel are ripe for review before the undersigned.

## V.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' Motions for summary judgment are governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient

to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that

demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI.  ANALYSIS

### A.  Whether Plaintiff has Failed to State a Claim

Rule 8 of the Federal Rules of Civil Procedure states that a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.Proc. 8(a). However, plaintiff must "offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (internal citations omitted). Specifically, "[t]he presence [ ] of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint do not support the legal conclusion." *Id*. at 405 n. 9 (internal quotation marks and citations omitted and alterations in original). In other words, even though the Court liberally construes *pro se* pleadings, Plaintiff still must do more than make mere conclusory statements to support his claim. *Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995); *see Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994) (affirming district court's dismissal of plaintiff's suit as frivolous where allegation was conclusory and nonsensical on its face); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (same, where plaintiff's complaint "failed to contain any factual allegations tending to support his bare assertion"). Furthermore, the District Court of South Carolina has held that "[g]eneral conclusionary allegations unsupported by facts are insufficient to constitute a cause of action [citation omitted] where the claims in a complaint are insufficiently supported by factual

allegations, these claims may be properly dismissed by summary dismissal." *Harper v. United States*, 423 F. Supp. 192, 196 (D.S.C. 1976) (citations omitted). With these legal tenets in mind, the Court turns to the Plaintiff's allegations.

### B.  Plaintiff's Section 1983 Claim for False Arrest and Malicious Prosecution

It is well-settled that Section 1983 "'is not itself a source of substantive rights,' but merely provides a 'method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994), *quoting Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979). "The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988), *citing Briley v. State of California*, 564 F.2d 849, 853 (9th Cir. 1977). Thus, "[t]he first step in any such claim is identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271, 114 S.Ct. at 811, *citing Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870 (1989). "If there is no violation of a federal right, there is no basis for a section 1983 action and no answer to a plea by the public officer of qualified immunity." *Clark*, 855 F.2d at 161.

"The touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036 (1978). "The plaintiff must show that such policy or custom amounted to 'deliberate

indifference' to their constitutional rights." *Washington v. Whitaker*, 317 S.C. 108, 113, 451 S.E.2d 894, 897 (1994), *citing Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986); *Todd v. Smith*, 305 S.C. 227, 407 S.E.2d 644 (1991).

Plaintiff's sole cause of action pled is pursuant to 42 U.S.C. § 1983, alleging false arrest and resulting in a violation of his constitutional rights by the Defendants.

### C. Plaintiff's Claim is barred by the Doctrine of Collateral Estoppel

Plaintiff contends that his Fourth Amendment rights were violated by Graham and Garner through the unlawful entry onto his uncle's property and the search of his person and seizure of the Gun. This claim is the same he made before Judge Herlong in his Suppression Hearing, *viz.,* he was illegally searched and the firearm giving rise to the charges against him was illegally seized. The Plaintiff is collaterally estopped from relitigating the issue whether his Fourth Amendment rights were violated. In *Gray v. Farley*, 13 F.3d 142 (4th Cir. 1993), the Court held that a prisoner was collaterally estopped from relitigating his Section 1983 claim if the matters had been previously resolved against him in a suppression hearing.[7] In *Gray*, in the course of his defense in the state court murder case, Gray moved to suppress his confession, contending that it had been coerced by beatings administered by the defendant officers he sued in his Section 1983 case. At the suppression hearing, Gray testified that after he was arrested by the defendants, he was struck several times while walking to the cruiser, in the cruiser, and while in jail. All of the sheriffs and deputy sheriffs who testified denied that these beatings occurred.

---

[7] The panel consisted of Circuit Judge Wilkinson, Senior Circuit Judge Sprouse, and Judge Michael, who, at that time, was a United States District Judge for the Western District of Virginia, sitting by designation.

*Gray*, 13 F.3d at 144, 146. The subject of the state suppression hearing was whether Gray had been beaten, and the state trial judge, in denying the motion to suppress, necessarily found that Gray's confession had not been coerced, and the West Virginia Supreme Court of Appeals affirmed that ruling. *Gray*, 13 F.3d at 146 (citation omitted).

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party of the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Gray,* the Fourth Circuit relied on *Allen v. McCurry*, to hold that a suppression hearing in an earlier state criminal trial collaterally estops the relitigation of the same issues in a Section 1983 action if the elements of collateral estoppel are met.[8]

---

[8] The court relied on West Virginia's collateral estoppel theory, as set forth below:

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
>
> But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by the way of estoppel rather than by the way of strict res adjudicata. *Gray* at 146, 147.

West Virginia's doctrine of collateral estoppel is similar that of South Carolina's, which is set forth below:

> Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action." Stone v. Roadway Express, 367 S.C. 575, 580, 627 S.E.2d 695, 698 (2006).

Indeed, both *Allen* and *Gray* stand for the proposition that a plaintiff may not relitigate federal civil rights claims based on search and seizure issues that had been previously determined on the merits at a formal suppression hearing. *See Allen*, 449 U.S. at 91, 101 S.Ct. 411; *Gray*, 13 F.3d at 146.

The issue of the propriety of Knox's search and seizure by Graham and Garner was the issue addressed in the Suppression Hearing before Judge Herlong. The issue was decided against Knox. Accordingly, Knox is collaterally estopped from relitigating these issues in the present action.

### D.  Plaintiff's Claim of Malicious Prosecution is Not Cognizable under Section 1983

Because § 1983 does not provide redress for violations of state law, *White v. Chambliss*, 112 F.3d 731, 738 (4th Cir.1997), there is no such thing as a 'malicious prosecution' claim under Section 1983. A Section 1983 'malicious prosecution' claim ... is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (internal citation and footnote omitted), cert. denied, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001); *see also Albright v. Oliver*, 510 U.S. 266, 271, 275, 114 S.Ct.

---

A party may assert nonmutual collateral estoppel to prevent relitigation of a previously litigated issue unless the party sought to be precluded did not have a fair and full opportunity to litigate the issue in the first proceeding, or unless other circumstances justify providing the party an opportunity to relitigate the issue. *Duckett v. Goforth*, 374 S.C. 446, 465, 649 S.E.2d 72 (S.C. App. 2007).

807, 127 L.Ed.2d 114 (1994) (holding that a claim for unlawful initiation of criminal proceedings could be brought under § 1983, if at all, only under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996) (foundation for a claim of malicious prosecution was "a seizure that was violative of the Fourth Amendment."). Thus, the Defendants' conduct must be evaluated solely by reference to the Fourth Amendment's prohibition against unreasonable seizures. *Gantt v. Whitaker*, 57 Fed. Appx. 141 (4th Cir. 2003).

To establish that his seizure was unreasonable, Knox must demonstrate that his arrest was without probable cause. *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ("Fourth Amendment seizures are 'reasonable' only if based on probable cause."); *Porterfield v. Lott*, 156 F.3d 563, 568-71 (4th Cir. 1998) (holding that a Fourth Amendment claim founded on malicious prosecution must be analyzed to determine whether probable cause for the arrest was lacking). Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir.1988). For probable cause to exist, there need be only enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed. *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield*, 156 F.3d at 569.

Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that

conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir.1992). Therefore, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* Accordingly, the appropriate probable cause inquiry focuses on the charged offense in relation to the information known to Graham and Garner at the time of Knox's arrest. Further, because "the reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective [,] . . . the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant." *Brooks v. City of Winston-Salem, N.C.,* 85 F.3d 178, 184 n. 5 (4th Cir. 1996).

The Plaintiff has come forward with assertions but no evidence to support his claim. Nothing in the affidavits and submissions filed by the Plaintiff has any bearing on required proof for the cause of action plead. Defendant Graham's sworn testimony at the suppression hearing clearly establishes probable cause for Mr. Knox's arrest. Nothing averred to or submitted by the Plaintiff creates any genuine issue of material fact as to any element of the Plaintiff's claim or Defendants' defenses.

### E.  The Defendants are entitled to Qualified Immunity

As another defense, Defendants argue that they are entitled to qualified immunity on the issue of whether they had probable cause to arrest and detain Plaintiff. Whether a government official performing a discretionary function is entitled to qualified immunity is a question of law for the Court. *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). To establish entitlement to qualified immunity, that government official must demonstrate that his "conduct does not violate clearly established constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In other words, when making a determination on the issue of qualified immunity, a court must (1) determine whether a constitutional right would have been violated on the facts alleged and (2) consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Further, to overcome qualified immunity, a court must find that the alleged facts demonstrate that "the established contours of probable cause were sufficiently clear at the time of the seizure such that the unlawfulness of the officers' actions would have been apparent to reasonable officers." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir.1998). This second step of the qualified immunity inquiry is an objective one, dependent not on the subjective beliefs of the particular officers at the scene, but instead on what a hypothetical, reasonable officer would have understood under those circumstances. *Milstead v. Kibler*, 243 F.3d 157, 161 (4th Cir.), cert. denied, 534 U.S. 888, 122 S.Ct. 199, 151 L.Ed.2d 141 (2001). It ensures that, when the legality of a particular course of action is open to reasonable dispute, an officer will not be subjected to trial and liability. Under the doctrine of qualified immunity, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

      Knox has failed to establish that the Defendants violated his rights, much less that he knowingly violated Knox's constitutional rights, thus entitling the Defendants to qualified immunity for all claims.

### F.  Eleventh Amendment Immunity

At all times relevant to this action, the Defendants were acting as employees of the State of South Carolina engaged in the performance of their official duties.  To the extent that the Defendants are sued in his official capacities, they are to be treated as the State of South Carolina and not subject to suit.  The United States Supreme Court held that "[a] suit against a state official in her official capacity . . . should be treated as a suit against the State." *Hafer v. Melo*, 116 L.E.2d 301, 309 (1991).  The Court stated, "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. at 309 (quoting *Kentucky v. Graham*, 473 U.S. 159 (1985) (further citation omitted)).  A defendant in an official capacity action is entitled to the immunities that the governmental entity possesses.  Based on the Supreme Court's ruling in *Hafer*, the action against the Defendants should be dismissed to the extent that they are sued in their official capacities.

### G.  Dismissal of State Law claims against Defendants

The Defendants are entitled to immunity from any alleged state law claims pursuant to the South Carolina Tort Claims Act.  S.C. Code Ann. § 15-78-10 *et. seq*.  Section 15-78-40 of the South Carolina Tort Claims Act (hereinafter the "Act") states that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein."  S. C. Code Ann. § 15-78-40.  Section 15-78-60 of the Act sets forth a number of limitations on governmental liability, one of which is applicable to the present situation:  Section 15-78-60

states:

> The governmental entity is not liable for a loss resulting from 5) the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee..

The South Carolina Court of Appeals has held that "the provisions relating to limitations on and exemptions to liability are to be liberally construed in favor of limiting the liability of the state." *Summers v. Harrison Construction*, 381 S.E. 2d 493, 495 (S.C.App. 1989). The Plaintiff has failed to assert any facts which would imply gross negligence on the part of the Defendants and the Defendants are therefore entitled to immunity.

## **RECOMMENDATION**

Based upon the foregoing, it is recommended that Graham's **Motion for Summary Judgment [50] be granted**; that Garner's **Motion for Summary Judgment [82] be granted**; and Plaintiff's Motion to Compel **[93] is moot**.

*/s/ George C. Kosko*
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

May 8, 2008
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).